POLSINELLI PC
Jason A. Nagi
900 Third Avenue, 21st Floor
New York, New York 10022
(212) 644-2092
jnagi@polsinelli.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF WAMU COMMERCIAL MORTGAGE SECURITIES TRUST 2007-SL3, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-SL3,<br><br>                Plaintiff,<br><br>-against-<br><br>DIANE YHUN and THE CITY OF NEW YORK PARKING VIOLATIONS BUREAU,<br><br>                Defendants. | Case No.:  14-cv-7376 |

## VERIFIED COMPLAINT

Plaintiff, for its Complaint against Diane Yhun ("**Borrower**") and the City of New York Parking Violations Bureau (the "**Parking Bureau**"), states as follows:

### Introduction

1. This is an action to foreclose a first-priority lien held by U.S. Bank National Association, as Trustee for the Registered Holders of WAMU Commercial Mortgage Securities Trust 2007-SL3, Commercial Mortgage Pass-Through Certificates, Series 2007-SL3 ("**Lender**") on certain real and personal property located in Brooklyn, New York. The lien secures a commercial mortgage loan made to Borrower in the amount of $498,750.00 (the "**Loan**"). The Loan has matured, and the full amount of the remaining indebtedness is now due and owing.

Borrower has failed to repay the remaining indebtedness owed under the Loan, and is therefore in default. As a result, Lender is entitled to foreclose its security interest in the property securing the Loan.

### The Parties

2. Lender is a national banking association organized and existing under the laws of the United States of America, acting as Trustee for a trust that has elected to be treated as a real estate investment conduit under the Internal Revenue Code of 1986. Lender is a citizen of the State of Ohio, where it maintains its principal office at 425 Walnut Street, Cincinnati, Ohio.

3. Borrower is a natural person, and a resident and citizen of the State of New York, with an address at 9216 Avenue K, Brooklyn, New York.

4. The Parking Bureau is a New York City agency and a citizen of the State of New York. The Parking Bureau is named as a defendant by virtue of possible liens it holds that encumber a portion of the property that secures the Loan.

### Jurisdiction and Venue

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among Lender and the defendants, and the amount at issue is in excess of $75,000.00.

6. The Court has jurisdiction over the parties in this matter because the Borrower resides in, owns property in, and conducts business in Brooklyn, New York, within this District. In addition, the Parking Bureau is an agency of the City of New York, which is located in this District.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**The Loan Transaction**

8. On or about February 6, 2007, Borrower signed and delivered to Washington Mutual Bank, F.A. ("**WaMu**") that certain Promissory Note in the Original Principal Amount of $498,750.00 (as at any time amended or restated, and together with any addendums, the "**Note**"). The Note evidences a $498,750.00 commercial mortgage loan made by WaMu to Borrower (the "**Loan**"). A true and correct copy of the Note is attached as **Exhibit A**.

9. In order to secure amounts due and owing under the Note, Borrower signed and delivered for the benefit of WaMu that certain Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated as of February 6, 2007 (the "**Mortgage**"), which encumbers certain real property located at or about 5316 Church Avenue, Brooklyn, New York, improvements thereon, and personal property, all of which is described more fully in the Mortgage (collectively, the "**Property**"). A true and correct copy of the Mortgage is attached as **Exhibit B**. The Property includes a two-story building with two residential apartments and retail space.

10. The Mortgage was duly recorded with the Office of the City Register of the City of New York on February 20, 2007, Control No. 2007000095929, and the New York recording tax was duly paid thereon.

11. The Note, the Mortgage, and all other documents evidencing, securing or executed in connection with the Loan, together with all modifications thereto, are sometimes referred to herein collectively as the "**Loan Documents**."

12. WaMu Assigned the Loan to Lender on June 1, 2007, pursuant to a Pooling and Servicing Agreement of the same date. In connection with the assignment of the Loan to Lender, the original Note, the original Mortgage, and other original Loan Documents were delivered to

Lender. In addition, the Note bears a stamped endorsement in favor Lender. The assignment of the Loan to Lender is further evidenced by that certain Assignment of Security Instrument and Loan dated as of February 6, 2007, and recorded with the City Register of the City of New York, CRFN 2007000549184 (the "**Recorded Assignment**"). A copy of the Recorded Assignment is attached as **Exhibit C**.

13. KeyBank National Association (f/k/a KeyCorp Real Estate Capital Markets, Inc.) d/b/a KeyBank Real Estate Capital ("**KeyBank**") has the power to act on behalf of Lender, including the power to prosecute this action, under that certain Limited Power of Attorney (the "**LPOA**"), dated May 1, 2009, granted by Lender to KeyBank. A true and correct copy of the LPOA is attached as **Exhibit D**.

14. The power of attorney granted to KeyBank under the LPOA was granted by the Lender to KeyBank after KeyBank was named as the Plaintiff's master and special servicer. KeyBank was so named pursuant to that certain Assignment, Assumption and Recognition Agreement (the "**Servicing Assignment**"), dated as of April 2009. A true and correct copy of the Servicing Assignment is attached as **Exhibit E**. Under the Servicing Assignment, KeyBank has the obligation to service the Loan, which includes enforcing Lender's rights under the Loan Documents.

15. Lender is the current holder and owner of the Loan Documents.

## Defaults Under the Loan Documents

16. Under the Loan Documents, the Note matured on March 1, 2014. The Borrower has failed to pay the matured debt due and owing under the Note. Borrower's failure to pay the matured indebtedness is an event of default under the Loan Documents.

17. On June 6, 2014, Lender sent written notice to Borrower of Borrower's default under the Loan Documents, and requested cure of such default. A true and correct copy of the June 6, 2014 letter is attached as **Exhibit F**.

18. Borrower has not cured the default set forth in the June 6, 2014 letter.

**Amounts Due Under the Loan Documents**

19. As of November 17, 2014, the following amounts are due and owing to Lender under the Loan Documents:

    (a) Principal in the amount of $455,088.57;

    (b) Regular interest in the amount of $23,462.41;

    (c) Regular interest at the per diem rate of $80.90 from November 18, 2014 and thereafter;

    (d) Default interest in the amount of $17,741.23;

    (e) Default interest at the per diem rate of $63.21 from November 18, 2014 and thereafter;

    (f) Late fees in the amount of $311.98;

    (g) Advances in the amount of $7,360.20;

    (h) Interest on advances in the amount of $346.94; and

    (i) Any and all fees and costs, whether incurred by Lender to date or incurred hereafter, in connection with the collection of the amounts due and owing under the Loan Documents or in connection with the protection, preservation and realization of the Property, including processing fees, late charges, prepayment consideration, expenses, administrative fees, attorneys' fees, and costs incurred in

connection with the issuance of third-party reports in connection with the Property, less any funds applicable to the debt currently held by Lender.

### Right to Possession and Rents Under the Loan Documents

20. Under Section 2.2(a) of the Mortgage, Borrower absolutely and unconditionally granted to Lender all of Borrower's right, title and interest now existing or hereinafter arising in and to the leases, subleases, concessions, licenses, franchises, occupancy agreements, tenancies, subtenancies and other agreements (collectively referred to in the Mortgage as "**Leases**"), that affect the Property, together with Borrower's interests in the Leases.

21. Under Section 2.2(b) of the Mortgage, Lender granted Borrower a revocable license to collect, receive, use and enjoy the rents and all sums due under the Leases (the "**License**"). Upon an Event of Default under the Loan Documents, the License granted by Lender automatically terminated.

22. Under Section 2.2(c) of the Mortgage, upon an Event of Default by Borrower, Lender is entitled, with or without providing notice to Borrower, to enter upon the Property, and with or without taking possession thereof, collect all rents relating to the Property.

23. As a result of Borrower's default under the Loan Documents, Lender is entitled to an order directing all rents, issues, proceeds, revenues, profits and income from the property be remitted to Lender in accordance with the terms of the Loan Documents, and directing that any such amounts be used to reduce the indebtedness described above.

### Right to Foreclosure

24. Upon an Event of Default, Lender has the right to institute a proceeding for foreclosure. Thus, Lender is entitled to an Order from the Court that the Mortgage be foreclosed

and that the liens provided therein be declared as first and prior liens on the Property and that Lender be granted immediate possession of the Property.

25. No other action has been brought to recover any part of the debt under the Mortgage, Note or other Loan Documents.

26. Parking Bureau has or claims to have some interest in or lien upon the Property or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of the Mortgage, and is subject and subordinate to the Mortgage.

27. Lender may not be deemed to have waived, altered, released or changed its election to foreclose by reason of any payment made after the date of commencement of this action of any and all of the defaults identified herein.

28. Lender specifically reserves the right to pursue a temporary injunction, to seek appointment of a receiver or to seek other relief with respect to its rights under the Loan Documents. Pursuant to N.Y. Real Prop. Acts Law § 1371, Lender reserves the right to move the Court to enter final judgment against Borrower or any other liable party for any residue of the debt under the Note remaining unsatisfied after the foreclosure sale of the Property is completed.

WHEREFORE, Lender respectfully requests that the Court enter judgment in favor of Lender for foreclosure of the Property as follows:

A. Finding that Lender has a first and best lien on the Property;

B. Ordering that Lender has the legal right and is authorized to foreclose on the Property:

  (i) In one or more parcels according to law together with the fixtures and articles of personality upon the premises;

      (ii)    subject to zoning restrictions and ordinances adopted by any municipality or other governmental authority, and violations thereof;

      (iii)    subject to any state of facts that an accurate survey would show;

      (iv)    subject to covenants and restrictions of record, if any;

      (v)    subject to violations, if any, noted by any federal, state, city, town or village agency having authority over the Property;

C. Finding that such foreclosure will vest in the purchaser thereat free and clear title to the Property, free of any and all interests that are or might be asserted by the Defendants to this Complaint;

D. Ordering that Lender has the right to credit bid at such foreclosure sale any and all amounts due to Lender under the Note;

E. Ordering and directing that the United States Marshal foreclose the Property and deliver title via deed and bill of sale, as appropriate, to the successful bidder at such foreclosure;

F. Ordering and directing that the proceeds of the sale be applied as follows:

      (i)    to payment of the expenses of the sale;

      (ii)    to the payment of the debt owed to Lender under the Note;

      (iii)    to the payment of foreclosure costs and other accrued costs in connection with the foreclosure;

      (iv)    to the payment, at Lender's option, of any real property taxes that may be due and unpaid in connection with the Property;

      (v)    to the payment, at Lender's option, of all other assessments against or attributable to the Property;

      (vi)    the surplus, if any, to the payment of the debts secured by junior liens on the Property and then, to Borrower, in accordance with further order of the Court;

G.    Ordering that Borrower has no right of redemption or reinstatement with respect to the Property;

H.    Finding that Lender has preserved its rights to pursue any deficiency that may exist under the Note or other Loan Documents after application of the proceeds of the foreclosure sale pursuant to N.Y. Real Prop. Acts. Law §1371 and may move the Court to enter final judgment against Borrower for such deficiency; and

I.    Ordering all further relief the Court deems just, proper and equitable.

Dated: New York, New York
       December 18, 2014

                                POLSINELLI PC

                                By:  *s/ Jason A. Nagi*
                                    Jason A. Nagi
                                    900 3rd Avenue, 21st Floor
                                    New York, New York 10022
                                    Telephone: 212.684.0199
                                    Facsimile: 212.684.0197
                                    jnagi@polsinelli.com

                              ATTORNEYS FOR PLAINTIFF

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on November 15, 2014

_____
Rachel Mashburn
Assistant Asset Manager
KeyBank National Association,
solely in its capacity as servicer and agent for U.S. Bank National Association, as Trustee for the Registered Holders of WaMu Commercial Mortgage Securities Trust 2007-SL3, Commercial Mortgage Pass-Through Certificates, Series 2007-SL3